862 So.2d 63 (2003)
GREAT HARBOUR CAY REALTY AND INVESTMENT COMPANY LIMITED, Appellant,
v.
M. Phillip CARNES, Ann T. Carnes, and T.D. Fender, Appellees.
No. 4D99-1615.
District Court of Appeal of Florida, Fourth District.
November 5, 2003.
Rehearing Denied January 22, 2004.
*64 Gerald F. Richman, Mark A. Romance, and Michael J. Napoleone of Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A., West Palm Beach, for appellant.
Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., Edna L. Caruso and Russell S. Bohn of Caruso, Burlington, *65 Bohn & Compiani, P.A., West Palm Beach, for appellees.
POLEN, J.
This appeal arises from a jury verdict awarding three million dollars in damages against the appellant based on a severance provision in an employment contract. The trial court subsequently denied appellant's motion for new trial, motion for judgment notwithstanding the verdict, and motion for remittitur. We affirm in part and reverse in part.
Great Harbour Cay Realty and Investment, Etc., ("Cay Realty") is a Bahamian Corporation. The owner, sole shareholder and decision maker of that company is T.D. Fender. In 1989 M. Phillip Carnes was hired by Fender to assist in the development of a Bahamian island. Carnes began working for Fender in 1989 pursuant to an oral agreement. On July 1, 1991 Carnes and Fender executed a written employment contract. In part, the employment contract contained a severance provision that read as follows:
A. This Employment Agreement may be terminated by GHCR & I by 30 day written notice to Executive with or without cause upon the following conditions:
1. If this agreement is not terminated by GHCR & I before October 1, 1991, the Executive shall be entitled to the following upon termination:
i. $42,500.00 representing (6) months salary and $100,000.00, making a total of $142, 500.00 severance pay;
ii. The severance pay provided for in I) above shall be payable in a lump sum within 30 days of termination;
iii. If this agreement is not terminated by GHCR & I by October 1, 1991, Executive shall be entitled to a 10% interest in GHCR & I payable when T.D. Fender has returned to him his entire investment in the GHCR & I.
iv. In the event this Agreement is terminated by GHCR & I on or before October 1, 1991, the parties hereto are relieved of any and all liability each to the other.
After Carnes was terminated he sought to collect on this severance provision. The issue at trial became the value of Cay Realty at the relevant time so that Carnes' severance pay could be accurately calculated. Fender took the position that the company had no value and therefore Carnes was entitled to nothing. Carnes on the other hand argued that the company was worth 30 million dollars.
At the conclusion of the trial, the trial court determined that the jury needed to decide two issues: (1) whether Carnes proved the value of GH Realty as of September of 1992, and if so (2) what was that value? The court commented that
There's very little evidence of what this ten percent is worth. I think that would be an appropriate interrogatory question for this jury to specifically answer, if that would be helpful.
. . .
There is very little evidence. What evidence there is is in conflict. And so we'll let the jury decide that, as both sides have urged, as to whether Plaintiff has proven its case that it is entitled to, whether its ten percent of anything.
If they believe Mr. Fender it's ten percent of nothing. It's ten percent of a minus value. If they believe Mr. Carnes, it's ten percent of 10 million or ten percent of 30 million, based basically on what Mr. Fender has said.
The jury returned a verdict finding that Carnes had proved the value of the company *66 to be 30 million dollars. For the reasons explained below we reverse that judgment and send the case back to the trial court for a new trial.
Cay Realty raises three issues on appeal. First, it argues the trial court erred in denying the motions for directed verdict and motion for judgment notwithstanding the verdict. We are unpersuaded by this argument and affirm the court's ruling in this regard without discussion. Cay Realty also argues that the trial court erred in dismissing its fraudulent inducement counter claim. We affirm the ruling of the trial court on that issue as well. However we agree with Cay Realty's third argument that the trial court committed reversible error in its evidentiary rulings.
Cay Realty asserts, and we agree, that the trial court erred in preventing them from introducing evidence of a 1995 Crown Grant. A Crown Grant is a Bahamian document executed in land transfers. Carnes contended that a Crown Grant was executed in 1992 which evidenced large amounts of land owned by Cay Realty. However, Cay Realty contended the 1992 Crown Grant was improper and a correct Crown Grant, which actually transferred the property, was not executed until 1995.
At trial, Fender was asked if Carnes ever procured the Crown Grant. Plaintiff's counsel objected on relevance grounds. Ultimately the court concluded that the 1995 Crown Grant was not relevant as to any of the issues the jury would decide and prohibited Cay Realty from introducing it.
"As a general rule, relevant evidence is that which tends to prove or disprove a material fact. All relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, or unless otherwise excluded by law." Grau v. Branham, 761 So.2d 375 (Fla. 4th DCA 2000) (citing §§ 90.401, 90.402, 90.403, Fla. Stat. (1997)).
It is illogical to suggest that the 1995 Crown Grant was irrelevant to the issue of what Cay Realty was worth at the time Carnes was terminated. The jury was specifically charged with determining the value of Cay Realty. Certainly the nature of this document had bearing on the assets of the company and on the date at which those assets were acquired. Its relevance is evident by the fact that the property contained in the Crown Grant, the date the Crown Grant was procured, and the named corporate entity in the Crown Grant were discussed at length by both parties. Thus we conclude that the trial court abused its discretion in finding that the document was irrelevant. We find this conclusion further supported by the lack of documentary evidence as a whole in this trial.
Carnes contends that any error was harmless. "A trial court's error in admitting or rejecting evidence does not necessarily constitute harmful error. The trial court's judgment should be reversed only where it appears that such error injuriously affected the substantial rights of the complaining party." Centex-Rooney Const. Co., Inc. v. Martin County, 706 So.2d 20 (Fla. 4th DCA 1997) (quoting Forester v. Norman Roger Jewell & Brooks Int'l, Inc., 610 So.2d 1369, 1372 (Fla. 1st DCA 1992) (internal citations and quotations omitted)).
In Dempsey v. Shell Oil Co., 589 So.2d 373 (Fla. 4th DCA 1991), where this court held that improper impeachment evidence was allowed in, this court also held that because the case turned on an issue of credibility, the error could not be deemed harmless.
The case at bar is akin to Dempsey in that it boiled down to an issue of credibility. *67 Carnes relied nearly exclusively, and apparently most heavily, on his testimony of what Fender told him the company was worth. Although we recognize that testimony was elicited regarding Crown Grant, we find the trial court's error was not harmless. It is pertinent that neither the 1992 or the 1995 Crown Grant was entered in to evidence. Moreover as the trial court aptly summarized, there was very little evidence in this case whatsoever. We conclude that the exclusion of this particular evidence injuriously affected the substantial rights of Cay Realty and therefore constituted harmful error mandating reversal.
Cay Realty next alleges the trial court erred by excluding the testimony of its Bahamian lawyer, Obie Pindling. We agree. One of Cay Realty's assertions was that Cay Realty was a separate corporate entity from Fender's other corporations. Carnes, on the other hand, asserted that Cay Realty was a parent corporation or at minimum that at some point it would become a parent corporation of Fender's other corporations. The relationship of Cay Realty to Fender's other corporations went directly to proving what assets Cay Realty had at the time Carnes was terminated.
Cay Realty sought to have its lawyer, Pindling, testify regarding the relationship of Cay Realty and Fender's other corporate entities. However Pindling was unavailable that day and out of state. After Carnes refused to agree to permit Pindling to testify via telephone, Cay Realty sought to publish excerpts of Pindling's deposition testimony or in the alternative sought a one-day continuance to allow Pindling to testify. The court denied both requests.
The proffered portion of Pindling's deposition included Pindling's testimony that Cay Realty was never the parent corporation of Fender's other corporations and that the land transfer through the Crown Grant did not occur until 1995. The trial court sustained the relevance objection, determined that the proffered testimony did not go to the valuation of the company, and that prohibiting the testimony would not limit the defense's ability to present evidence regarding the value of the company because Fender had the opportunity to testify on the same matter.
In Ziegler v. Klein, 590 So.2d 1066 (Fla. 4th DCA 1991), this court stated:
A motion for continuance is addressed to the sound judicial discretion of the trial court and absent abuse of that discretion the court's decision will not be reversed on appeal. However, when undisputed facts reveal that the physical condition of either counsel or client prevents fair and adequate presentation of a case, failure to grant a continuance is reversible error.
Once again, we feel compelled to refer to the trial court's recognition of the lack of evidence presented in this case. The proffered testimony makes abundantly clear that Pindling was going to provide further insight in to the assets owned, or not owned, by Cay Realty at the time of Carnes' termination. This issue was relevant and the failure to grant a one day continuance, or at minimum to permit the admission of the deposition testimony, was an abuse of the trial court's discretion, as it prevented Cay Realty from fairly presenting its case.
Last, Cay Realty claims the trial court erred as a matter of law in dismissing its fraudulent inducement claim. On its cross-claim, Cay Realty sought to rescind the employment contract based on allegations that Carnes fraudulently induced Cay Realty to enter into the contract by misrepresenting his qualifications. The trial court dismissed this claim based on the trial court's conclusion that it appeared *68 to be a legal impossibility to rescind the contract and place the parties where they would have been had there been no contract.
In, Anchor Bank, S.S.B. v. Conrardy, 763 So.2d 360 (Fla. 4th DCA 1998), this court held that it is: well-settled law in Florida that a condition precedent to rescission is that the other party be returned to his status quo. Generally, a contract will not be rescinded even for fraud when it is not possible for the opposing party to be put back into his pre-agreement status.
The general rule is subject to an exception when the inability of one party to restore is caused by the very fraud perpetrated by the other party. In this situation, the defrauded person is excused from restoration if the inability to restore is caused by the wrongdoer's conduct (quoting Bass v. Farish, 616 So.2d 1146, 1147 (Fla. 4th DCA 1993))
In dismissing the fraud claim, the trial court noted that neither counsel was able to show the court a case where an employment contract had been rescinded. On Appeal Cay Realty asserts error based on the trial court's failure to recognize the exception to the status quo precedent noted above. However, Cay Realty is unable to demonstrate recision or the exception being applied in an employment contract situation. As a result, we find no error in the trial court's dismissal and affirm that ruling.
REVERSE IN PART, AFFIRM IN PART, and REMAND for further proceedings consistent with this opinion.
FARMER, C.J., and ANDREWS, ROBERT LANCE, Associate Judge, concur.